UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION |
| VERSUS | NO. 25-805 |
| SADE WILLIAMS | SECTION: D (5) |

**ORDER AND REASONS**

Before the Court is a Motion for Judgment of Default and Incorporated Memorandum in Support filed by the Plaintiff, the United States of America.[1] The Government seeks a default judgment against Defendant Sade Williams. The Motion is unopposed. After careful consideration of Plaintiff's memorandum, the record, and the applicable law, the Court **GRANTS** the Motion.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff the United States of America ("the Government" or "Plaintiff") filed suit in this Court against Defendant Sade Williams ("Williams") seeking damages for unjust enrichment/payment by mistake and penalties under the False Claims Act ("FCA") and Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA").[2] The Government alleges that Williams misrepresented information on her application for a loan under the Payroll Protection Plan ("PPP") pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and used the loans for unauthorized purposes.[3]

---

[1] R. Doc. 12.
[2] *See* R. Doc. 1.
[3] *Id.*

The Government alleges the following facts in its Complaint. On March 16, 2021, Williams received a PPP loan under the CARES Act in the amount of $20,832.00. The loan issued was "based upon false and fraudulent records and statements in a claim for payment submitted to Capital Plus Financial, LLC."[4] In her application, the Government asserts that Williams "misrepresented his annual income and payroll costs, which were used in calculating his eligible loan amount."[5] The Government specifies Williams's misrepresentations:

> Williams or persons acting in conspiracy with her, falsely claimed in an application for a PPP loan that Williams was the sole proprietor of a hair company that was founded in 2018 and in operation on March 20, 2021, when in fact Williams was not an eligible self-employed individual or employer in that line of business…
> Williams, or persons acting in conspiracy with her, falsely claimed that she had earned $101,305 in gross income as an owner of a hair company from 2018 as reported on IRS Form 1040, Schedule C, Line 7, when in fact she did not earn or report income in that amount…
> Williams, or persons acting in conspiracy with her, submitted a false and fraudulent Form 1040, Schedule C showing $101,305 in gross income, when in fact she did not earn that amount, nor filed the Form 1040 with the IRS…
> Williams, or persons acting in conspiracy with her, submitted a false and fraudulent bank statement purporting to be from "JRMartin Choice Bank" for "Natural Hair Afro, LLC" and authorized user "Sade Williams," when in fact no such bank, bank account, or business existed…
> Williams, or persons acting in conspiracy with her, further falsely claimed that the PPP loan funds would be used for authorized expenditures under PPP rules (such as payroll, mortgage interest, rent, utilities, and covered supplier costs), when in fact Williams actually used the funds for unauthorized expenditures…
> Williams, or persons acting in conspiracy with her, certified that the information provided in his application and supporting documentation

---

[4] *Id.* at ¶ 8.
[5] *Id.* The Court notes that the Government interchangeably uses the words "his" and "her" in the Complaint when referencing Defendant Sade Williams. *See* references to "his" in ¶¶ 8, 10, 13, and 20(f), (h), and (i) and references to "her" in ¶¶ 20 (a), (b), (c), (d), €, (f), (g), (h), and (i). These typographical errors do not impact the Court's analysis.

was true and correct in all material respects, when in fact it was false and fraudulent in the above-stated material respects, among others to be shown at trial.[6]

Furthermore, Williams "knowingly used the PPP loan funds for unauthorized purposes" and "knowingly misrepresented his use of the funds on the forgiveness application submitted for the PPP loans."[7] The Government specifies that, when applying for forgiveness of the loan, Williams

> falsely claimed that she spent $20,832 of the loan proceeds on payroll, when in fact she used the entirety of the PPP loan for other purposes… Williams, or persons acting in conspiracy with her, falsely certified in his PPP loan forgiveness application that she had complied with all requirements of the PPP Rules and guidance related to eligible uses of PPP loan proceeds, when in fact she had not complied, but rather had spent the PPP loan proceeds on ineligible personal uses…
> Williams, or persons acting in conspiracy with her, falsely certified that the information provided in his PPP loan-forgiveness application was true and correct in all material respects, when in fact the PPP loan forgiveness application had false, material information the SBA relied upon to forgive Williams's PPP loan.[8]

Based upon Williams's false representations, the Small Business Administration ("SBA") "forgave Williams's PPP loan of $20,832.00 and accrued interest of $117.47" and "paid $2,500.00 in processing fees to Capital Plus Financial, LLC for the PPP loan disbursed to Williams."[9]

On April 24, 2025, the Government filed the Complaint seeking damages for unjust enrichment/payment by mistake and penalties under the FCA and FIRREA.[10]

---

[6] *Id.* at ¶ 20.
[7] *Id.* at ¶¶ 9-10.
[8] *Id.* at ¶ 20.
[9] *Id.*
[10] *Id.*

Defendant Williams was personally served on August 8, 2025;[11] however, she has failed to answer or otherwise plead in response to Plaintiff's Complaint. On September 16, 2025, the Clerk of Court for the United States District Court for the Eastern District of Louisiana entered default against Williams pursuant to Federal Rule of Civil Procedure 55(a).[12]

The Government filed the instant Motion for Judgment of Default against Williams pursuant to Federal Rule of Civil Procedure 55(b)(1), seeking relief in the form of a money judgment in a sum certain by computation.[13] The Government contends that a default judgment is proper because, as its attached declaration from Special Agent Chris Reyes demonstrates and in light of Williams's default, "Williams is indebted to the United States in the amount of $23,419.96, plus post-judgment interest accruing on that amount at the legal rate under 28 U.S.C. § 1961."[14] As a result, the Government argues that it is entitled to a default judgment for that sum certain. The Government further requests the Court to dismiss Counts III and IV of the Complaint.[15]

In response to the Motion, the Court issued a Show Cause Order in which Defendant Sade Williams was ordered to appear in person at the United States District Court for the Eastern District of Louisiana on February 26, 2026, at 1:00 p.m., and show cause as to why default judgment should not be entered against her.[16]

---

[11] R. Doc. 8.
[12] *See* R. Doc. 11.
[13] R. Doc. 12.
[14] *Id.* at ¶ 7; *see also* R. Doc. 12-1, *Declaration of Special Agent Chris Reyes*.
[15] *Id.* at ¶ 8.
[16] R. Doc. 13.

The Order was sent to Williams via email, U.S. mail, and certified mail to both addresses noted on the executed summons.[17] While the Court received a return the certified mail as undeliverable at the 140 Gonzales Court address, the Court did not receive a return from the United States Postal Service at the 205 Jackson Street address.[18] The order was sent additionally via regular mail and by email. The Court has been advised that there was no "bounce back" notice or other indication that the email containing the Order was not received. Despite this Order, Williams did not appear.

## II.   LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs the process in which a party may seek judgment due to the default of an opposing party. "[D]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."[19] "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."[20] Accordingly, a default judgment is appropriate only when "the adversary process has been halted because of an essentially unresponsive party."[21]

A plaintiff seeking default judgment must proceed through two steps: (1) the plaintiff must petition the clerk of court for an entry of default and (2) if the plaintiff's

---

[17] *See* R. Doc. 13-1. The Order was sent via first class and certified mail to 140 Gonzales Court, Houma, Louisiana 70364-4803 as well as to 205 Jackson Street, Houma, Louisiana 70363.
[18] *See id.* and R. Doc. 14.
[19] *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead and Savings Ass'n.*, 874 F.2d 274, 276 (5th Cir. 1989)).
[20] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).
[21] *Sun Bank*, 874 F.2d at 276 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

claim is not for a sum certain, then the plaintiff "must apply to the court for a default judgment."[22]  In order for the clerk of court to enter a default against a defendant pursuant to Rule 55(a), the plaintiff must show "by affidavit or otherwise" that the defendant "has failed to plead or otherwise defend."[23]  Beyond that requirement, however, the entry of default is largely mechanical.  Upon the clerk's entry of default, the defendant is deemed to have admitted the plaintiff's well-pleaded factual allegations.[24]

Next, after the entry of default, "the Court *may* enter a default judgment against a party when it fails to plead or otherwise respond to the plaintiff's complaint within the required time period."[25]  A court may enter a default judgment only if the plaintiff has stated a cognizable legal claim supported by well-pleaded factual allegations, which the court accepts as true.[26]

### III. ANALYSIS

#### A. Jurisdiction

Before entering judgment, a district court must "look into its jurisdiction both over the subject matter and the parties."[27]  "Judgment entered in the absence of jurisdiction is void, and the Court must therefore refrain from entering judgment if

---

[22] Fed. R. Civ. P. 55.
[23] Fed. R. Civ. P. 55(a).
[24] *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[25] *Granite State Ins. Co. v. Delta Marine Env't, LLC*, No. CV 18-3571, 2018 WL 6067552, at *1 (E.D. La. Nov. 20, 2018) (Africk, J.) (citing Fed. R. Civ. P. 55(b)) (emphasis added).
[26] *See Nishimatsu*, 515 F.2d at 1206 ("There must be a sufficient basis in the pleadings for the judgment entered."); *Lewis*, 236 F.3d at 767.
[27] *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001).

its jurisdiction is uncertain."[28]  Here, subject matter jurisdiction is based upon a federal question and upon the fact that the United States has brought the action.[29] The jurisdictional requirements of 28 U.S.C. § 1331 and § 1335 are satisfied because the United States is proceeding in its sovereign capacity and because the suit arises under the False Claims Act.[30]  Furthermore, it appears that the Court has personal jurisdiction over Williams because she is a citizen of Louisiana.[31]

### B.    Whether Default Judgment is Appropriate in this Matter

The Court first considers whether the initial entry of default by the clerk of court was appropriate.  Plaintiff has shown by affidavit that the Defendant, Williams, was personally served on August 8, 2025.[32]  Pursuant to Fed. R. Civ. P. 12, Williams had twenty-one days to file responsive pleadings to Plaintiff's complaint after having been served.[33]  Williams did not make any appearance in this Court; the record clearly demonstrates that Williams has "failed to plead or otherwise defend."[34]  The United States moved for Entry of Default against Williams which the Clerk of Court properly entered on December 28, 2022.[35]  Therefore, the Court finds that the entry of default against Williams was warranted.

The Court next considers whether Plaintiff is entitled to a default judgment. The Plaintiff Government is seeking a sum certain, and the Motion for Default

---

[28] *RSDC Holdings, LLC v. Steinberg*, No. CV 16-9381, 2017 WL 117314, at *2 (E.D. La. Jan. 12, 2017) (Vance, J.).
[29] *See* R. Doc. 1 at ¶ 3.
[30] *See* R. Doc. 1 at ¶¶ 19-22; 31 U.S.C. § 3729(a)(1)(A)–(B).
[31] *See* R. Doc. 1 at ¶ 2; Fed. R. Civ. P. 4(k).
[32] *See* R. Doc. 8; R. Doc. 15-2.
[33] *See* Fed. R. Civ. P. 12(a)(1)(A)(i).
[34] Fed. R. Civ. P. 55(a).
[35] R. Docs. 10-11.

Judgment is properly before this Court.[36] The Court must now determine whether the Plaintiff has adequately stated a valid cause of action entitling it to relief. A court may only enter a default judgment if the factual allegations in the pleadings, which the court accepts as true, provide a "sufficient basis" for a default judgment.[37]

Here the Plaintiff Government argues that it is entitled to damages based on unjust enrichment and payment by mistake. Regarding the claim of unjust enrichment, because the suit relates to the Government's rights under a nationwide federal program, the PPP in this case, the Court finds that federal law applies.[38] Under federal common law, to recover on a claim of unjust enrichment, a plaintiff "must show (1) [it] had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment."[39] Defendant received substantial funds from the PPP, totaling $20,832.00, based on her misrepresentations on her application for the loan.[40] The Plaintiff Government has shown (1) that Williams understood the terms and conditions of the loan that would require repayment to the Government, (2) that the loan would not be issued or forgiven if certain conditions were not met, and (3) that the interests of society, as reflected by the purpose of the CARES Act and the PPP, would be defeated should Williams not be required to pay

---

[36] *See* Fed. R. Civ. P. 55.
[37] *See Nishimatsu*, 515 F.2d at 1206.
[38] *United States v. Vernon Home Health, Inc.*, 21 F.3d 693, 695 (5th Cir. 1994) ("[F]ederal law governs cases involving the rights of the United States arising under a nationwide federal program.").
[39] *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 993–94 (4th Cir. 1990) (citing C. Kaufman, *Corbin on Contracts* § 19A, at 50 (Supp.1989)); *see also U.S. ex rel. Roberts v. Aging Care Home Health, Inc.,* 474 F. Supp. 2d 810, 820 (W.D. La. 2007).
[40] R. Doc. 1 at ¶ 10.

for the loans obtained via misrepresentations. The Court finds that the Government has validly stated a cause of action for unjust enrichment.

The Government additionally argues that it is entitled to damages based on payment by mistake. Regarding this claim, "[t]he Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid."[41] "No statute is necessary to authorize the United States to sue in such a case. The right to sue is independent of statute."[42] For a claim related to a false claim, the Government must show that "(1) payments were made (2) under belief that they were properly owed; (3) that belief being erroneously formed; and (4) the mistaken belief was material to the decision to pay."[43] The Government, however, need not "show that the defendant[ ] knew the payments were mistaken."[44] Based on the factual allegations in the Government's Complaint—which Williams is deemed to have admitted by his default—the Court finds that the Government is entitled to relief for payment by mistake. The Court finds that the Government has demonstrated that Williams obtained funds from the United States to which she was not entitled and that the Government approved a loan for Williams to which she was not entitled.[45] Furthermore, the Court finds that the Government has shown that it forgave the loan made to Williams based on her material misrepresentations.

---

[41] *United States v. Wurts*, 303 U.S. 414, 415, 58 S. Ct. 637, 638, 82 L. Ed. 932 (1938); *see also United States v. Medica–Rents Co.*, 285 F.Supp.2d 742, 776 (N.D.Tex. 2003).
[42] *Id.*
[43] *U.S. ex rel Trim v. McKean*, 31 F. Supp. 2d 1308, 1316 (W.D. Okla. 1998) (citing *United States v. Mead*, 426 F.2d 118, 124 (9th Cir.1970)).
[44] *Medica-Rents Co.*, 285 F. Supp. 2d at 776.
[45] *See* R. Doc. 1.

Before entering a default judgment in favor of the Plaintiff, however, the Court must consider whether the six factors listed in *Lindsey v. Prive Corp.*[46] weigh in favor of entering a default judgment in this case. These factors include:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.[47]

Regarding the first factor, the Court finds that there are no material facts in dispute because Williams failed to file responsive pleadings to the Complaint; Williams's default is an admission of the Government's well-pleaded allegations.[48] Therefore, there is no factual dispute because all material facts have already been deemed admitted by Williams.

Second, in regard to substantial prejudice, the Court is aware of the burden that delay can impose on litigants.[49] However, courts "can deal with obstinate and dilatory parties in a variety of ways, and judgment by default should not be the first resort."[50] Further, the Fifth Circuit has noted that default judgments are generally disfavored, as there is a strong policy in favor of decisions on the merits.[51] But when a defendant's complete failure to appear brings the adversary process to a halt, this prejudices the plaintiff's interests. Here, Williams has completely failed to appear

---

[46] *Lindsey v. Prive Corp.*, 161 F.3d 886 (5th Cir. 1998).
[47] *Id.* at 893 (citing 10 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2685 (2d ed. 1983)).
[48] *See Nishimatsu*, 515 F.2d at 1206.
[49] *See Sun Bank*, 874 F.2d at 277.
[50] *Id.*
[51] *See Lindsey*, 161 F.3d at 893.

whatsoever, prejudicing the Government's interest in recouping the fraudulently obtained funds. Until judgment is rendered, the Government continues to suffer an uncompensated injury. Therefore, for purposes of this analysis, the Court finds this second factor to weigh in favor of the Government.

Third, the grounds for default are clearly established, making this factor weigh in favor of the Government. Williams was served more than five months ago, has made no appearance at all in this matter, and has not responded to the Court's Orders. Fourth, the record does not indicate any reason or excuse on the part of Williams for her failure to appear. Next, the Court finds that the fifth factor regarding the harshness of a default judgment weighs in favor of the Government as well. The Government is seeking damages based on Counts I and II of its Complaint in a sum certain of $23,419.96. The Court does not find this requested relief to be overly harsh given that the Government is also requesting that the Court dismiss Counts III and IV of its Complaint, which include claims for harsher civil penalties.[52] Additionally, Williams has been given ample time to respond to the Government's Complaint which mitigates the harshness of a default judgment.[53] Thus, this factor weighs in favor of Plaintiff.

---

[52] R. Doc. 1 at p. 9; R. Doc. 12 at p. 2.
[53] *See United States v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (citing *Lindsey*, 161 F.3d at 893). Importantly, the Court further notes that the Plaintiff Government was in email contact with the Defendant after filing the Complaint but before seeking an Entry of Default. *See* R. Doc. 7-1. Those emails reflect communication between the Defendant and the Assistant United States Attorney ("AUSA") for over one month in which the AUSA sent the Defendant a copy of the Complaint on at least two occasions. In one email, the AUSA advises the Defendant that the amount of debt is $23,419.96 and further advises, "Please review and, if you are willing, I can draft a consent judgment whereby you agree to pay this amount back to the government." The Defendant responds in an email that, "Yes, I'll do monthly payments." The Court used that same email address

Lastly, the Court finds that the sixth factor—whether the Court would think itself obligated to set aside the default judgment on the defendant's motion—weighs in favor of the Government. Given that the Motion for Default Judgment is unopposed and no response has been filed to date notwithstanding Defendant's awareness of the lawsuit and that the Defendant failed to respond to the Court's Show Cause Order,[54] the Court is unaware of any facts that would lead it to set aside the default judgment if challenged by the Defendant. Williams has not presented the Court with any argument indicating that the Court would reach a different outcome with respect to a motion to set aside a default judgment under Fed. R. Civ. P. 60(b). Moreover, based on the evidence in the record, the Court does not believe that Williams would be able to produce a "meritorious defense."[55]

Because the Court finds that the Government is entitled to judgment on Counts I and II based on a sum certain by computation, and because the Court finds that the *Lindsey* factors weigh in favor of granting the default judgment, the Court determines that a default judgment in favor of the Plaintiff, the United States, is appropriate in this case.

IV. **CONCLUSION**

For the foregoing reasons,

---

to send the Orders to Show Cause to the Defendant. The Court further notes that this is the exact amount, the "sum certain" of $23,419.96 that the Government now seeks in a default judgment.
[54] R. Doc. 13.
[55] *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) ("To determine whether . . . to set aside a default . . . we . . . consider three factors . . . whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.").

**IT IS HEREBY ORDERED** that Plaintiff's Motion For Default Judgment[56] is **GRANTED**. A separate judgment shall issue.

New Orleans, Louisiana, March 10, 2026.

*Wendy B Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[56] R. Doc. 12.